See also: 229 F.3d 1258.

Russell Allen NORDYKE; Ann Sallie Nordyke, dba TS Trade Shows; Jess B. Guy; Duane Darr; William J. Jones; Daryl David; Tasiana Wertyschyn; Jean Lee, Todd Baltes; Dennis Blair; R.A. Adams; Roger Baker; Mike Fournier; Virgil McVicker, Plaintiffs–Appellants,

v.

Mary V. KING; Gail Steele; Wilma Chan; Keith Carson; Scott Haggerty, County of Alameda; The County of Alameda Board of Supervisors, Defendants–Appellees.

No. 99–17551.

United States Court of Appeals, Ninth Circuit.

Sept. 12, 2000

Before: ALARCON, O'SCANNLAIN, and GOULD, Circuit Judges.

### ORDER

O'SCANNLAIN, Circuit Judge.

We certify to the California Supreme Court the question set forth in Part III of this order.

All further proceedings in this case are stayed pending receipt of the answer to the certified question. This case is withdrawn from submission until further order of this court. If the California Supreme Court accepts the certified question for answer, the parties shall file a joint report six months after date of acceptance and every six months thereafter advising us of the status of the proceedings. This case is being certified jointly with *Great Western Shows, Inc. v. Los Angeles*, 229 F.3d 1258 (9th Cir.2000), which raises a closely related issue of preemption.

## I

Pursuant to Rule 29.5 of the California Rules of Court, a panel of the United States Court of Appeals for the Ninth Circuit, before which this appeal is pending, certifies to the California Supreme Court a question of law concerning the possible state preemption of local gun control ordinances. The decisions of the Courts of Appeal of the State of California provide no controlling precedent regarding the certified question, the answer to which may be determinative of this appeal. We respectfully request that the California Supreme Court answer the certified questions presented below. Our phrasing of the issue is not meant to restrict the court's consideration of the case. We agree to follow the answer provided by the California Supreme Court. If the Supreme Court declines certification, we will resolve the issue according to our perception of California law.

## II

Nordyke, et al., are deemed the petitioners in this request because they are appealing the district court's ruling on this issue. The caption of the case is:

RUSSELL ALLEN NORDYKE; ANN SALLIE NORDYKE, dba TS Trade Shows; JESS B. GUY; DUANE DARR; WILLIAM J. JONES; DARYL DAVID; TASIANA WERTYSCHYN; JEAN LEE, TODD BALTES; DENNIS BLAIR; R.A. ADAMS; ROGER BAKER; MIKE FOURNIER; VIRGIL McVICKER, Plaintiffs–Appellants,

v.

MARY V. KING; GAIL STEELE; WILMA CHAN; KEITH CARSON; SCOTT HAGGERTY, COUNTY OF ALAMEDA; THE COUNTY OF ALAMEDA BOARD OF SUPERVISORS, Defendants–Appellees.

Counsel for the parties are as follows:

For Nordyke, et al.: Donald E.J. Kilmer, Jr., San Jose, California.

For King, et al.: Richard E. Winnie, County Counsel, County of Alameda, Oakland, California.

Sayre Weaver, Richards, Watson & Gershon, San Francisco, California.

## III

The question of law to be answered is:

1. Does state law regulating the possession of firearms and gun shows preempt a municipal ordinance prohibiting gun possession on county property?

## IV

The statement of facts is as follows:

Russell Nordyke and Sallie Nordyke (dba TS Trade Shows) ("Nordyke") have been promoting gun shows at the Alameda County Fairgrounds ("Fairgrounds") since 1991. The Fairgrounds are located on unincorporated county land in the City of Pleasanton.[1] The exhibitors at the show include sellers of antique (pre–1898) firearms, modern firearms, ammunition, Old

---

1. Thus, the jurisdictional issue raised in *Great Western Shows, Inc. v. Los Angeles County* is not present in this case.

West memorabilia, and outdoor clothing. In addition, the show hosts educational workshops, issue groups and political organizations. The remaining plaintiffs are exhibitors and patrons of the show.

In August 1999, Alameda County ("County") passed an ordinance making illegal the possession of firearms on County property ("Ordinance"). The Ordinance would forbid the presence of firearms at gun shows, such as Nordyke's, held at the Fairgrounds. Practically, the Ordinance makes it unlikely that a gun show could profitably be held there.

To prevent the Ordinance's enforcement, Nordyke brought suit against the County in the United States District Court for the Northern District of California. Nordyke applied for a temporary restraining order, claiming that the Ordinance was preempted by state gun regulations and that it violated the First Amendment's free speech guarantee. The district court judge treated the application as one for a preliminary injunction and denied it. The judge noted that under either test for a preliminary injunction, a litigant must at least show a fair chance of success on the merits and ruled that Nordyke had failed to do so. Because he concluded that Nordyke had little chance of success on the merits, he did not reach the balance of the hardships determination.

Nordyke then filed an interlocutory appeal in the United States Court of Appeals for the Ninth Circuit.

### V

■ We respectfully submit that the question needs certification for the following reasons:

### A

■ "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws.*" CAL. CONST. art XI, § 7 (emphasis added). A local law that conflicts with state law is invalid. *See Sherwin–Williams Co. v. City of Los Angeles,* 4 Cal.4th 893, 897, 16 Cal.Rptr.2d 215, 844 P.2d 534 (1993). "A conflict exists if the local legislation duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication." *Id.* (quotations and citations omitted). The district court concluded that the County did not legislate in an area the state had expressly or impliedly preempted. California law offers no clear guidance concerning the possible preemption of the Alameda Ordinance.

In pertinent part, the Ordinance reads: "Every person who brings onto or possesses on County property a firearm, loaded or unloaded, or ammunition for a firearm is guilty of a misdemeanor." Alameda County Code § 9.12.120(b). Although not explicit in the Ordinance, the law effectively hinders Nordyke's efforts to hold gun shows at the Fairgrounds. In an effort to ward off application of the Ordinance, Nordyke argues first that the state has preempted the field of firearm possession. Second, he contends that, at least by implication, state regulation of gun shows, which provides for the possession of weapons, precludes local prohibitions of firearms at these shows.

Section 12071 of the Penal Code regulates the sales of firearms in California, expressly providing for the possession of firearms at gun shows. It reads in relevant part: "A person licensed pursuant to subdivision (a) may take possession of firearms and commence preparation of registers for the sale, delivery, or transfer of firearms at gun shows or events.... A person conducting business pursuant to this subparagraph shall be entitled to conduct business as authorized herein at any gun show or event in the state without regard to the jurisdiction within this state that issued the license ... provided the person complies with ... (ii) all applicable local laws, regulations, and fees, if any." Cal.Penal Code § 12071(b)(1)(B). In addition, California Penal Code § 12071.1 reg-

ulates gun shows throughout the state. Finally, the state legislature enacted a series of gun show regulations effective January 1, 2000. *See* Cal.Penal Code §§ 12071.1; 12071.4. These laws clearly pertain to the possession of firearms at gun shows. From these provisions, one could well conclude that, as the state allows for the presence of and regulates the possession of firearms, a local government may not forbid it. On the other hand, the proviso allowing for local regulation may mean that municipal prohibitions are not preempted.

The Courts of Appeal of the State of California have responded in seemingly conflicting ways to this type of argument in the area of local gun regulation preemption. The argument finds most support in *Doe v. City & County of San Francisco*, 136 Cal.App.3d 509, 186 Cal.Rptr. 380 (1982). In that case, the court inferred from the legislature's restriction on local handgun permit requirements an intent to foreclose local laws banning possession citywide. *Id.* at 518, 186 Cal.Rptr. 380. "A restriction on requiring permits and licenses necessarily implies that possession is lawful without a permit or a license. It strains reason to suggest that the state Legislature would prohibit licenses and permits but allow a ban on possession." *Id.; see also Northern California Psychiatric Society v. City of Berkeley*, 178 Cal. App.3d 90, 223 Cal.Rptr. 609 (1986) (holding that a city ordinance prohibiting the use of electroshock therapy throughout the city was preempted by state regulations evincing a clear intent to allow it). Moreover, an Attorney General opinion regarding the preemption of local ammunition sale bans adopts the same reasoning, relying explicitly on *Doe. See* Attorney General's Opinion No. 94–212 (July 7, 1994). In that Opinion, the Attorney General relied on the fact that the state banned ammunition over a certain caliber to conclude that a city could not ban smaller-caliber ammunition. Likewise, the state legislature's having expressly provided for the presence of firearms at gun shows may imply that

local ordinances, like that of Los Angeles, banning the possession of such weapons are preempted.

More recently, however, in *California Rifle and Pistol Ass'n v. City of West Hollywood*, 66 Cal.App.4th 1302, 78 Cal. Rptr.2d 591 (1998), the Court of Appeal for the Second Appellate District of California appears to have disavowed the logic underlying the district court's conclusion and the pertinent part of *Doe*. In *California Rifle*, the court confronted a challenge, on preemption grounds, to a city ban on sales of certain handguns known as Saturday Night Specials. *Id.* at 1306–07, 78 Cal. Rptr.2d 591. The court expressly considered an argument analogous to the one Nordyke makes here-that because state law envisions possession at gun shows, the County cannot foreclose possession at gun shows. There, the court confronted the argument that because under state law sales of firearms are regulated, but legal, a city cannot ban the sale of certain types of firearms. *See id.* at 1323, 78 Cal.Rptr.2d 591. The court rejected this reasoning as tautological: "Again, it is no doubt tautologically true that something that is not prohibited by state law is lawful under state law, but the question here is whether the Legislature intended to strip local governments of their constitutional power to ban the local sale of firearms which the local governments believe are causing a particular problem within their borders." *Id.* at 1324, 78 Cal.Rptr.2d 591. This reasoning appears to be at tension with the reasoning of *Doe*.

Furthermore, the court's discussion of preemption in *California Rifle* suggests that the Ordinance may very well not be preempted. First, the court held that the California legislature has not expressly preempted local regulation of handgun sales. *See id.* at 1311–17, 78 Cal.Rptr.2d 591. Next, the court examined whether, as the district court concluded here, the local law was impliedly preempted. "[I]mplied preemption can properly be found

only when the circumstances 'clearly indicate' a legislative intent to preempt." *Id.* at 1317, 78 Cal.Rptr.2d 591 (quoting *Sherwin–Williams,* 4 Cal.4th at 898, 16 Cal. Rptr.2d 215, 844 P.2d 534).

When the Legislature has passed laws to overturn a court's decision that a local government's laws are not preempted, it has tailored them narrowly, refusing at every turn to preempt the entire field of gun control. This history demonstrates "a legislative intent to permit local governments to continue to apply their police power according to the particular needs of the community." *California Rifle,* 66 Cal. App.4th at 1318, 78 Cal.Rptr.2d 591; *see also Suter v. City of Lafayette,* 57 Cal. App.4th 1109, 1119, 67 Cal.Rptr.2d 420 (1997). The careful wording of the legislature's response may indicate that it does not wish to preclude local actions in areas where it has not expressly preempted. *See California Rifle,* 66 Cal.App.4th at 1319–20, 78 Cal.Rptr.2d 591 (discussing *Suter,* 57 Cal.App.4th at 1120–21, 67 Cal. Rptr.2d 420). Finally, the Courts of Appeal of the State of California appear to have foreclosed an argument for gun sale preemption based on the assertion that the adverse affects of a local law on transient citizens outweigh the benefit to the municipality. *See California Rifle,* 66 Cal. App.4th at 1320–21, 78 Cal.Rptr.2d 591.

The California cases teach that when examining the preemption issue in the field of gun control, courts are to look narrowly at the specific conduct at issue-here, the sale of guns on County property. The Ordinance here does not ban possession at all gun shows held in the County, it bans possession on County property only. This may distinguish it from the Ordinance held impliedly preempted in *Doe. See* 136 Cal. App.3d at 518, 186 Cal.Rptr. 380. While the Ordinance may have the practical effect foreclosing shows Nordyke has traditionally held at the County Fairgrounds, it does not speak at all to gun shows held on any non-County property in the county. But the question we face is whether the extensive state regulation of gun shows, all of which foresees the sale of firearms, precludes even such action. Also uncertain is whether the state law provisions requiring gun shows to comply with all local regulations allow municipalities to completely prohibit possession at these shows, an action that may have the practical effect of shutting them down.

In sum, there is tension in the reasoning underlying several decisions of the Courts of Appeal of the State of California and an Opinion of its Attorney General. In addition, no California court, to our knowledge, has yet confronted the possible preemptive impact of the new gun show regulations that went into effect January 1, 2000. We are mindful of the considerations of comity when we are being asked to invalidate, on federal constitutional grounds, a local California law. Resolution of the state law issue may obviate the need to decide the federal constitutional question. The area of gun control regulation is a sensitive area of local concern with which we hesitate to interfere, particularly where we are asked to determine unclear questions of state law. A clear statement by the California Supreme Court would provide guidance to local governments with respect to the powers they may exercise in passing local gun control regulations.

## VI

The Clerk of Court is hereby directed to transmit forthwith to the California Supreme Court, under official seal of the Ninth Circuit, a copy of this order and request for certification and all relevant briefs and excerpts of record pursuant to California Rule of Court 29.5(c).

IT IS SO ORDERED.